## THE J. R. WATKINS COMPANY, a Corporation, Respondent, v. M. D. KEENEY, A. J. Theede, and Thos. J. Green, Appellants.

(37 A.L.R. 1389, 201 N. W. 833.)

**Principal and surety — fraud practiced by surety does not generally affect liability of surety to creditor, not party to fraud.**

1. Fraud practiced by the principal upon the surety, to which the creditor

Note.— (3) Right of obligee in surety bond to fill blank as to amount, see annotation in 37 A.L.R. 1395; 21 R. C. L. 1009.

or his agent is in no sense a .party, does not, as a rule, affect the liability of the surety to the creditor.

**Alteration of instruments — person signing instrument with unfilled blanks is liable to third persons, though blanks are filled in an unauthorized manner.**

2. A person who delivers an instrument with blanks therein which are afterwards filled in an unauthorized manner, may, nevertheless, be bound thereby when, in a good faith reliance thereon, third persons have justifiably acted in such a way as to be prejudiced if the instrument be held invalid.

**Principal and surety — one signing surety bond containing blanks must be understood to intrust it to principal, to be filled properly; delivery of surety bond by sureties with amount of principal's indebtedness left blank does not impliedly authorize creditor to fill blank.**

3. If one signs a surety bond containing blanks, he must be understood to intrust it to the principal, to whom he delivers it, to be filled properly. Delivery of the bond with the amount of the indebtedness due the creditor from the principal in blank, altho such indebtedness is, in general terms, assumed or guaranteed by the sureties, does not, by implication, in the absence of express authorization, confer authority on the creditor to fill such blank and thereby convert the bond into an account stated as between the creditor and the sureties.

**Principal and surety — filling of blanks in surety bond by creditor so as to contain amount of existing indebtedness held to constitute material alteration.**

4. Held, under the facts and for reasons stated, that the filling of blanks in a surety bond by the creditor, when not expressly or impliedly authorized, so as to contain the amount of the existing indebtedness, owing by the principal to the creditor, constitutes a material alteration and avoids the instrument.

Opinion filed December 20, 1924. Rehearing denied January 20, 1925.

Alteration of Instruments, 2 C. J. § 140 p. 1252 n. 36. Principal and Surety, 32 Cyc. p. 25 n. 91; p. 68 n. 63, 65; p. 181 n. 95.

Appeal from District Court of Richland County, *Wolfe,* J.

Reversed and new trial ordered.

*Purcell & Slattery* and *Lauder & Lauder,* for appellants.

The fact that a party may have manual possession of the contract does not show complete delivery, as the question is still open whether the delivery was absolute or conditional. Koester v. N. W. Port Huron Co. 24 S. D. 546, 124 N. W. 740; Guild v. Moore, 32 N. D. 456.

Every contract of every form is incomplete until there has been a delivery of it with the intention that it shall presently take effect. Stockton v. Turner, 30 N. D. 641.

A person will not be permitted to reap the fruits of his own dishonest acts upon the ground that had the person with whom he dealt been more alert, more suspicious, wiser in the ways of crooks, less confiding, less trustful he would not have been defrauded. Aultman v. Olson (Minn.) 26 N. W. 451; Maxfield v. Schwartz, 47 N. W. 448; Ward v. Speltz, 58 N. W. 426; Woodbridge v. De Witt, 70 N. W. 506; Strand v. Griffith, 97 Fed. 854; Chamberlain v. Fuller, 59 Vt. 256; Warder v. Whitish, 46 N. W. 540.

In the trial of an action it is no answer to the party who has been overreached and swindled that had he been less credulous or more keen in the given transaction he would not have been defrauded. Strand v. Griffith, 97 Fed. 854; Chamberlin v. Fuller, 59 Vt. 256, 9 Atl. 832; Warder Co. v. Whitish, 77 Wis. 430, 46 N. W. 540.

A person cannot procure a contract in his favor by fraud or misrepresentation as to its contents, and then bar a defense to a suit on the ground that had not the other party been so ignorant or negligent he could not have succeeded in deceiving him. Warder v. Whitish, 77 Wis. 430.

As between the original parties when it appears that one has been guilty of intentional and deliberate fraud, by which, to his knowledge, another has been misled or influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised ordinary care and diligence. Linington v. Strong, 107 Ill. 302; C. Aultman & Co. v. Olson, 34 Minn. 450; Frohreich v. Gammon, 28 Minn. 476; Miller v. Sawbridge, 29 Minn. 442; Gardner v. Trenary, 65 Iowa 646.

*Dan. R. Jones, Tawney, Smith & Tawney,* and *Lawrence, Murphy & Nilles,* for respondent.

In the absence of evidence to the contrary, it will be presumed that the delivery of a bond was unconditional. Gyger v. Courtney, 59 Neb. 555, 81 N. W. 437.

The surety trusts the principal. If there is anything upon the face of the bond which would suggest inquiry to the ordinary prudent man,

the rule is otherwise. Middleboro Nat. Bank v. Richards, 55 Neb. 682, 76 N. W. 528; Gailbraith v. Shores-Mueller Co. 178 Ky. 688, 199 S. W. 779; Watkins Medical Co. v. Hogue (Ark.) 219 S. W. 628; Pingrey, Suretyship & Guaranty, 2d ed. § 51; Stearns, Suretyship, 2d ed. § 108.

The mere doing of something apparently for another does not alone warrant the conclusion that the doing is by the authority or as agent of that other and the acts or declarations of an agent are not admissible to prove his agency. Dolan v. Keppel (Iowa) 179 N. W. 515; Gunsten v. Gordon (Wis.) 152 N. W. 187; Heffernan v. Whittlesey, 126 Minn. 163, 148 N. W. 63; Equitable Prod. Exch. v. Keyes, 67 Ill. App. 460; Gutterson v. Dilley, 201 Mich. 579, 167 N. W. 865.

Unless the pleadings show the possession of writings or documents by a party, and unless it further appears from the pleadings that such documents will be necessarily used on the trial, a demand for the production of such writings must be made before the trial before secondary evidence of their contents can be received. Hanson v. Lindstrom, 15 N. D. 584.

One who signs as surety a probate bond, and delivers it to the agent of the principal with nothing on its face to indicate that other sureties are to be obtained, will not, after it has been delivered to the probate judge, who has no notice of the omission to obtain other sureties, be permitted to defeat his liability on it, by contending that it was not to be delivered without the addition of the names of other persons as sureties do. Beldon v. Hurlbut, 94 Wis. 562, 37 L.R.A. 853.

If a creditor accepts a contract upon which there is one surety, he cannot be deprived of his security because the surety signed upon the condition, expressed to the principal alone, that the obligation should not be delivered until another had signed as co-surety. The estoppel against the promisor is clear; he should not be heard to assert a defense which works an injury to another, and which is based upon his own neglect in failing to communicate the condition to the creditor. Stearns, Suretyship, 3d ed. 1580.

It seems to be elementary that a party to a written agreement is bound thereby, and it is no defense to show that he neglected to read it before signing the same, unless he can prove that he was prevented from reading the instrument by the fraud, artifice, or design of the

other party, or his authorized representatives. Rokusck v. Nat. Union F. Ins. Co. (N. D.) 195 N. W. 300; Little v. Little, 2 N. D. 175, 49 N. W. 736; 13 C. J. 370.

JOHNSON, J. This is an appeal from a judgment of the District Court of Richland County in favor of the plaintiff in the sum of $2859.13 and from an order denying a motion for a new trial. Keeney defaulted.

The plaintiff is a foreign corporation, with its principal place of business in the City of Winona, Minnesota. It is engaged in the business of manufacturing and distributing remedies, spices and other goods, wares and merchandise through salesman to whom definite territory is assigned. The defendant Keeney had a contract of salesmanship with the plaintiff, covering the south half of Richland County, "except the west range." The contract involved in this litigation is dated December 1, 1920. He had been salesman for plaintiff in the same territory for several years, apparently executing a new contract each year. The other defendants, Theede and Green, are variously referred to as sureties or guarantors. Without determining their exact status, we shall, in this opinion, call them sureties. The contract is substantially the same as the one described in J. R. Watkins Medical Co. v. Payne, 47 N. D. 100, 180 N. W. 968. Immediately following the signature of the company and of defendant Keeney appears the obligation signed by the sureties, as follows:

"In consideration of the execution of the foregoing agreement by The J. R. Watkins Company, which we have read or heard read and hereby agree and assent to, and the sale and delivery by it to the party of the second part, as vendee, of its goods and other articles, and the extension of the time of payment of the indebtedness now due from him to said company, as therein provided, we, the undersigned sureties, do hereby waive notice of the acceptance of this agreement and diligence in bringing action against said second party, and jointly, severally and unconditionally promise and guarantee the full and complete payment of said indebtedness, the amount of which is now written in said agreement, or if not we hereby expressly authorize the amount of said indebtedness to be written therein, and jointly, severally and unconditionally promise to pay for said goods and other articles,

and the prepaid freight and express charges thereon, at the time and place, and in the manner in said agreement provided."

We set this undertaking out in full because it is somewhat different from the engagement made by the sureties in the Payne Case, appearing on pages 103 and 104 of the official report (180 N. W. 969). In that case the sureties executed the agreement in consideration of $1.00 and also in consideration of the execution of the contract. In the case at bar, the recital of $1.00 has been eliminated and instead the consideration for the obligation of the sureties is the execution of the agreement by the plaintiff and extension of the time of payment of existing indebtedness due plaintiff from Keeney. In the Payne case there was no recital in the obligation signed by the sureties with respect to the amount of the indebtedness, except by reference to such amount as it appeared in the body of the main contract; in the case at bar this part of the agreement has been modified by inserting therein the following clause, after the word "indebtedness," "the amount of which is now written in said agreement, *or if not we hereby expressly authorize the amount of said indebtedness to be written therein.*"

Reference should also be made to the contract under consideration in the case of Dr. Koch Medical Tea Co. v. Poitras, 36 N. D. 144, 161 N. W. 727. The obligation of the sureties in that case was a guaranty of "the full and complete payment of all indebtedness of the party of the second part to the party of the first part, arising under the agreement." It was there held that insertion in the contract, by plaintiff, of the amount due it from the assignor of Poitras, after the execution thereof by the sureties, constituted a material alteration. It will be observed in the case at bar that the agreement of Keeney's codefendants purports, upon its face, to give express authority to an unnamed person to fill the amount of the existing indebtedness in a space left blank for that purpose.

The sureties answered and contested the right of the plaintiff to recover as against them. They sought to prove, among other things, that they were induced to sign the instrument by the representations of the principal Keeney to the effect that he would procure the signature of another as co-obligor, and, also, that at the time he was not indebted to the company in any amount. The trial court excluded this testimony and offers of proof of the same general tenor, on the

theory that Keeney, in procuring the sureties, was not acting as agent
of the plaintiff, but, rather, for himself; that, therefore, any fraud
practiced or misrepresentations made by him were not binding on the
plaintiff, unless it had actual knowledge thereof; and that, inasmuch
as the evidence showed, and there was no offer of proof to the con-
trary, that the plaintiff had no knowledge of any alleged fraud or
misrepresentation of which Keeney was guilty when he induced his
codefendants to sign the contract of guaranty, the plaintiff was not
bound thereby. In other words, the trial court applied the general
rule, stated in the Poitras case, supra, to the effect that fraud practiced
by the principal upon the surety to which the creditor or his agent is
in no sense a party does not affect the liability of the surety to the
creditor. It is strenuously urged by counsel for the defendants and
appellants that the trial court erred in this regard; that Keeney was
in fact the agent of the plaintiff in procuring guarantors of pre-existing
indebtedness; and that the filling of the blank as to the amount of the
pre-existing indebtedness was wholly unauthorized and constituted a
material alteration of the instrument so as to render the same un-
enforceable against the sureties.

It seems to be conceded that if Keeney was the agent of the plain-
tiff in procuring the execution of the bond, the plaintiff can not escape
the consequences of the fraud alleged to have been committed by him
in order to induce the other defendants to sign the instrument. It
is strenuously urged, however, that Keeney was acting for himself and
not as agent of the plaintiff, when he induced his codefendants to
execute the instrument. It is said that the entire transaction was for
his benefit; that his and the plaintiff's interests were antagonistic;
and that he procured more goods, an extension of time, and additional
credit from plaintiff in reliance on the undertaking of Keeney's co-
defendants.

In support of the contention that Keeney was agent of the plaintiff,
the sureties rely largely on Dr. Koch Medical Tea Co. v. Poitras,
supra. The conclusion that Poitras was the agent of the plaintiff,
rather than of his codefendants, guarantors, or sureties in the obliga-
tion, was rested largely, if not entirely, upon the fact that Poitras paid
his codefendants $1.00, as consideration for their entering into the
engagement, and that this amount was paid to Poitras by the plaintiff

company for the express purpose of procuring their signatures as sureties. In other words, in that case, Poitras was held to have been acting directly for the company in paying the consideration to the sureties and in obtaining their signatures. The court said, referring to the case of Saginaw Medicine Co. v. Batey, 179 Mich. 651, 146 N. W. 329: "We are satisfied, however, that in that case the court failed to consider the reason for and effect of the consideration of $1.00 for the guaranty and the fact that, if a binding contract is made, which shall bind the guarantor without further acceptance by the Medicine Co. someone must act for that company in the making of that contract, and that someone can only be the person who pays the money and obtains the guaranty."

In the case at bar, Keeney's codefendants waived notice of acceptance. The evidence, however, shows, without dispute, that they were expressly notified that the contract signed by him as *"sureties"* had been received and accepted by the plaintiff. Furthermore, there is no recital of the payment of a cash consideration. The consideration for the undertaking of the sureties, expressly recited in the obligation, is the extension of credit and of time of paying the past due indebtedness. We can not distinguish this undertaking, in principle, from that of the sureties in an ordinary bond given for the faithful performance of duties by the principal as a condition precedent to his employment by, or the performance of services by him, in any capacity for, the beneficiary. It is expressly provided in the contract that Keeney "shall have no power or authority to incur any debt, obligation or liability of any kind whatsoever in the name of or for or on account of said company." The defendants have offered no evidence or justification for their failure to know of this provision in the contract, if they did not know of it, and, upon familiar principles, must be charged with knowledge thereof as of the time they executed the agreement. They both read English and there is no evidence that they were prevented from reading the instrument by the fraud, artifice or design of any one. Embden State Bank v. Shea, 50 N. D. 455, 196 N. W. 307; J. R. Watkins Medical Co. v. Montgomery, 140 Ark. 487, 215 S. W. 638; J. R. Watkins Medical Co. v. Coombes, 66 Okla. 126, 166 Pac. 1072; J. R. Watkins Medical Co. v. Bailey, 217 Ill. App. 460; Galbraith v. Shores-Mueller Co. 178 Ky. 688, 199 S. W. 779; Saginaw

Medicine Co. v. Batey, supra. See also J. R. Watkins Medical Co. v. Hunt, 104 Neb. 266, 177 N. W. 462.

We conclude, therefore, that the trial court correctly held that Keeney was not acting for the plaintiff during the negotiations leading up to and including the signing of the bond.

The court instructed the jury that "there is but one issue in this case. . . . Did the defendants Theede and Green sign the paper, Ex. 1?" (The contract.) The court then told the jury that even if the amount of the indebtedness was inserted in the contract after they signed, that would not be a material alteration. This is assigned as error.

It is a rule, as equitable as it is firmly established, that a principal may be, and frequently is, bound by an instrument in which blanks have been filled in an unauthorized manner, where, in a good faith reliance thereon, third persons have acted in such a way as to be prejudiced if the instrument be held invalid. Merchants' Nat. Bank v. Brastrup, 39 N. D. 619, 168 N. W. 42; White v. Duggan, 140 Mass. 18, 54 Am. Rep. 437, 2 N. E. 110; Taylor County v. King, 73 Iowa, 153, 5 Am. St. Rep. 666, 34 N. W. 774; Belden v. Hurlbut, 94 Wis. 562, 37 L.R.A. 853, 69 N. W. 357. It would seem, therefore, that had Keeney filled the blank space with the amount of his indebtedness to plaintiff, and if the plaintiff had in good faith relied on the instrument and advanced goods or given credit on the strength of it, the defendants could not now be heard to say that Keeney had fraudu-. lently inserted a larger amount than 'he represented as owing to the plaintiff at the time he induced his codefendants to sign. They, not the plaintiff, trusted the principal in the obligation, on this point; they, not the plantiff, put it in his power to defraud; they would be estopped to deny liability on account of the misconduct of a person whom they intrusted with an incomplete instrument, as against one who justifiably acted to his prejudice in a good faith belief that the document delivered, for the purpose for which its execution was procured, was in fact what upon its face it purported to be. Nothing on the face of the contract, when presented to the plaintiff, suggested fraud or misconduct on the part of Keeney, or any other person.

The defendants, Theede and Green, did not, according to their testimony, give actual oral authority to Keeney to fill the amount of his

indebtedness to the plaintiff in the blank space left for that purpose in the contract; indeed, they assert that Keeney, fraudulently and in order to induce them to sign the undertaking, represented that he was in no manner indebted to the plaintiff. The obligation they signed and delivered to Keeney, however, *expressly authorized some one to fill the blank.* Whom? We think Keeney. If he was acting for himself—as plaintiff contends—in procuring sureties on this contract, it was he, not some one else, who was authorized by the sureties to fill the blanks therein. "If one signs an instrument containing blanks, he must be understood to intrust it to the *person to whom it is so delivered,* to be filled up properly, . . . and when so filled, the instrument is as good as if originally executed in complete form." Merchants' Nat. Bank v. Brastrup, supra; Porter v. Hardy, 10 N. D. 551–556, 88 N. W. 460; Styles v. Thoe. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708; Montgomery v. Dresher, 90 Neb. 632, 38 L.R.A. (N.S.) 423, 134 N. W. 251. Such is the settled rule in this jurisdiction. Keeney did not fill the blank. Plaintiff's witnesses testify that the blank was filled in its offices, but before the contract was signed by the defendants. Theede and Green say that the blank had not been filled when they signed, and Keeney says he made no change in the instrument after it was signed. Authority to Keeney to fill the blank was not authority to the plaintiff, unless, indeed, Keeney was an agent of plaintiff, to procure the consent of defendants that plaintiff fill such blank, a proposition strenuously denied by respondent. It follows that the filling of the blank, if it was wholly unauthorized, as claimed by defendants, constituted, under the decision in the Poitras Case, a material alteration, and resulted in the discharge of the sureties or guarantors. J. R. Watkins Co. v. Fornea, 135 Miss. 690, 100 So. 185. See also §§ 5940, 6668, and 6681, Comp. Laws, 1913; and Dr. Koch Medical Co. v. Poitras, supra.

It may be that the holding in the Poitras Case that filling the blank constitutes a material alteration, seems somewhat technical, especially, in view of the fact that the amount for which the sureties would have been liable on the face of the contract there in suit, had no amount been stated, but merely a general assumption of the indebtedness for a consideration, was exactly the same as it would have been had the amount been inserted in the original contract. This rule has,

ever, been established in this jurisdiction for several years and it is our duty to apply it in a proper case. Although no reason for the rule is suggested in the Poitras Case, we are satisfied that it rests on sound principles. The alteration clearly enlarges the effect of the instrument as a means of proof. With the blank unfilled, or the amount left out of the undertaking, the plaintiff would have to prove the account and its correctness; with the blank filled, or the amount given, the indebtedness becomes an account stated between the parties, ordinarily not open to impeachment except on the ground of mistake or fraud. See Foster v. Dwire, 51 N. D. 581, 199 N. W. 1017. This issue of fact should have been submitted to the jury under appropriate instructions.

It is not seriously disputed that the defendants, Theede and Green, are liable for the default of Keeney on account of goods sold the principal after the contract was made. No legal defense has been suggested or interposed against such liability.

There must be a new trial. It is so ordered.

BRONSON, Ch. J., and CHRISTIANSON, NUESSLE, and BIRDZELL, JJ., concur.